————o————

JOHN M. DANIELS, Defendant in Error, *vs.* ST. LOUIS, KANSAS CITY AND NORTHERN RAILROAD. COMPANY, Plaintiff in Error.

1. *Corporations—Damages—North Mo. and Mo. Kans. & Tex. R. R. Companies—Latter company not subject to corporation damage law.*—By its purchase, on the 5th day of February, 1872, of the property, "privileges, rights and franchises" of the North Missouri Railroad, under the act of March 24th, 1870 (Adj. Sess. Acts 1870, pp. 90, 91, § 21), The Missouri, Kansas & Texas Railroad assumed the obligations and liabilities imposed and obtained the rights conferred on the former company by the charter amendment of February 18th 1865, (Sess. Acts 1865, p. 89, §§ 1, 2) and was not subject to the corporation damage law. (Wagn. Stat., 310-11, § 43; See State ex rel. vs. Greene County, 54 Mo., 540.) The legislature, by the corporation law, did not attempt to repeal the charter of the North Missouri Railroad Company. Whether it had power to do so, *quære.*

## Error to Audrain Circuit Court.

*Wells & Blodgett,* for Plaintiff in Error, cited Gorman vs. Pac. R. R., 26 Mo., 441; Sloan vs. Pac. R. R. 61 Mo., 24; Sly vs. Penn. R. R. Co., 65 Penn. St., 209; Campbell vs. Marietta & Cin. R. R., 23 Ohio St., 188–9; Tomlinson vs. Branch, 15 Wal., 465; Phil. & Wilm. R. R. vs. Maryland, 10 How., 376; State ex rel. vs. Greene Co., 54 Mo., 540.

*W. O. Forrest, with Daniel Brothers,* for Defendant in Error.

I. Plaintiff in error was subject to the rule of damages as fixed by its own charter. (Wagn. Stat, 310, § 43. *et seq.* ; Bac. Abr., vol., 2, Title Corporation, p. 452 : Beatty vs. Marine Ins. Co., 2 Johns., 109 ; Ruggles vs. Collier, 43 Mo., 375, and cases cited.)

II. Plaintiff in error did not, and could not, by the conveyance mentioned in the record, acquire any of the corporate franchises of the North Mo. R. R. Co., so as to change or alter its duties or liabilities, as imposed and fixed by its own charter. (Bac. Abr., vol. 2, p. 439 ; Stewart vs. Jones, 40 Mo., 140 ; Ohio ex rel. vs. Sherman, 22 Ohio St., 428 ; Coe vs. Col. Piq. & Ind. R. R. Co., 10 Ohio St., 378 ; Atkinson vs. The M. & C. R. R. Co., 15 Ohio St., 33, *et seq.* ; Campbell vs. M. & C. R. R. Co., 23 Ohio Stat., 168.)

NAPTON, Judge, delivered the opinion of the court.

This was an action for damages under section 43 of the 2nd article of the general corporation act. (Wagn. Stat., 310.)

It is unnecessary to state the details of the petition and answer, or the instruction, verdict and judgment for the plaintiff, as the only question is, whether the defendant is subject to all the duties and liabilities imposed on railroad corporations by the 43d section above referred to. The facts necessary to an understanding of the point in controversy were agreed on, and are substantially these :

The North Mo. R. R. Co. was incorporated in 1851, and the charter was amended in 1853, and again by an act of February 18, 1865. By this last act, which it is agreed was duly accepted by the company, the following provisions were made : 1. "When any part of said N. M. R. R. now constructed, or to be constructed, passes through any improved lands, it shall be obligatory on said R. R. Co. to fence each side of said road with a good, lawful fence of rails or posts and plank, and after the lands are so fenced, the fence shall be maintained and kept in good order at the expense of the

owner of said lands; and should the owner neglect to keep up said fence and keep gates closed, and stock belonging to the owner of said lands should be killed in consequence thereof, the said R. R. Co. shall not be liable for the killing of stock where the road has been so fenced at the expense of the company." 2d. "When any portion of said road or its branches, now constructed, or to be constructed, shall pass through unimproved lands, the N. M. R. R. Co. shall not be required to fence such lands; but in the event of stock being killed by the carelessness of the running of trains by said company, it shall be required to pay the full value of said stock, and where stock shall not have been killed by carelessness in running trains of said company, it shall pay one-half of the value of all stock killed, and the carcasses of all animals killed shall belong to the owner of the animals killed; but when full compensation is made, the value of the carcass shall be credited, and only the actual loss paid."

On the 1st of October, 1868, the N. M. R. R. Co. borrowed four millions of dollars, and to secure the payment thereof executed a mortgage of the road, and all the privileges, franchises, powers, etc., belonging to said corporation, to Humphreys and Vail, trustees. Default being made in the payment, on the 26th of August, 1871, the trustees advertised the road and sold it, in accordance with the mortgage, to one Jessup. It is agreed that the N. M. R. R. Co. had the power and authority to borrow money and to mortgage and convey the railroad and all its property, rights and franchises, etc., to secure the payment of any sum so borrowed.

On the 2d day of January, 1872, the St. Louis, Kansas City and Northern Railway Company was duly organized under the general laws of the State. This last company, the present defendant, was authorized to build a road in the city and county of St. Louis, from North Market, the then terminus of the N. M. R. R., to Plum street, and in the counties of Clay and Jackson, from the terminus of the N. M. R. R., in Clay county, to the Union depot in Kansas City. The road was built, and on the 5th of February, 1872, the company

purchased from Jessup all the N. M. R. R., its privileges, rights, franchises, real estate and other property.

This purchase was made under the authority of an act of the legislature passed March 24th, 1870, which provided that any railroad company organized in pursuance of the laws of this State, might lease or purchase all, or any part of a railroad, with all its privileges, rights, franchises, real estate and other property, the whole or a part of which was in this State, and constructed, owned or leased by any other company, if the lines of the road or roads of said companies were continuous, or connected at a point within or without this State, upon such terms as might be agreed upon, etc.; provided that no such lease or purchase should be perfected until a meeting of the stockholders of said company or companies of this State, party or parties to such agreement, whereby a railroad in this State might be leased or purchased, should have been called by the directors thereof, at such time and place and in such manner as they might designate, and the holders of the majority of the stock of such company, in person or by proxy, should have assented thereto." It is agreed that the purchase thus made was with the unanimous consent of the stockholders of the St. Louis, Kansas City and Northern Railway Company.

The question is as to the liability of the defendant to damages under the 43d section of the general railroad law.

The position of the defendant is, that all the rights, privileges and franchises which were held by the N. M. R. R. Co. are now vested in the defendant, the St. Louis, K. C. & Northern Railway Co., and that in operating the purchased road the defendant is subject to all the restrictions, and entitled to all the benefits attaching to the N. M. R. R. company by its charter; in other words, that the defendant occupies the place of the purchased railroad, and must operate the road in conformity to the charter of the purchased road, and not under its own charter. On the other hand, it is contended that the mere purchase of the franchises of another corporation does not affect the liabilities of the purchasing corporation under its own charter.

. We are satisfied that, both on principle and authority the position of the plaintiff in error, the original defendant, is correct.

Of course this opinion is based on the assumption that the entire transaction was authorized by the legislature. In this case the mortgage of the road and its franchises, to secure the payment of the four million borrowed, was expressly authorized by an act of the legislature, and the purchase by the new company, the present defendant, was also expressly authorized by legislative enactment. The interposition of Jessup in the transaction could not alter the essential character of the sale and purchase. By reference to the date it will be seen to have been merely nominal, and probably with a view to ascertain at what price the road could be bought. The object of the legislature was manifestly to keep alive the rights and duties of the old company and to transfer them to the new company, the purchaser. That the franchise was not intended to be resumed by the State is clear. The intent of the legislature then, must have been, as was observed by the U. S. Sup. Ct., in Tomlinson vs. Branch, 15 Wal., 465, "that such property was to be holden in the same manner, and subject to the same rights as before. The owners of the property were to lose no rights by the transfer, nor was the public to lose any right thereby."

In the case of Sly vs. Penn. R. R. Co. (65 Penn. St., 209) the question is fully discussed, and the court conclude that, "the lessee of a railroad corporation must necessarily be bound by all the prohibitions and limitations contained in the charter of the lessor; and on the other hand must be held to be entitled to all their rights and franchises. The legislature, by authorizing another corporation to take such lease, have, by necessary implication, conferred them."

So, in the case of Campbell vs. Marietta & Cinn. R. R. Co., (23 Ohio St., 188) it was held that "it must be inferred that the legislature intended the purchasing company to succeed to the powers and privileges of the vending company, and to none other. The intrinsic, as well as the market value, of

such property, as a railroad, largely depends upon the rates which may be charged for transportation thereon. If the chartered rates follow the property, the contracting parties stand on perfect equality; but if the value, or in other words, the inducement to contract, depend on the chartered privileges of the purchaser, the equality is not preserved, and especially would different companies, with different charters, occupy unequal grounds as bidders for and purchasers of such property."

The same view was taken by this court, in regard to the effect of a consolidation of roads, declaring that the former rights and privileges adhered to the companies after consolidation. (State ex rel. vs. Greene county, 54 Mo., 540.)

Upon the authority of these cases, if authority could be needed to sustain what would seem to be clearly deducible from the legislation on the subject, our conclusion is, that the defendant occupies the same position as the N. M. R. R. Co. would, if the suit had been against such company.

That the 43d section of the second chapter of the corporation law, or the "double damage act," as it is termed, is inconsistent with the provisions of the charter of the N. M. R. R. Company, is obvious upon a bare examination of the two provisions. Both are doubtless designed to effect the same common object, both are strictly police provisions, but the means of protection to life and property in the two cases is quite different. It follows, that, until the legislature shall adopt a different mode from that adopted in the charter, the present company occupying the place of the old one, is subject only to such penalties as are prescribed in the N. M. R. R. charter. The 43d section was not made applicable to the N. M. R. R. Co. The 48th section of the same law declares, that "all existing railroad corporations within the State, and such as may hereafter be chartered or formed, shall respectively have and possess all the powers and privileges contained in this chapter, and they shall be subject to all the duties, liabilities and provisions herein contained, not inconsistent with the provisions of this charter." A transposition of two

words in this section occurs in the printed statute, but it is obvious that this was a mere clerical error, or a mistake of the printer in punctuation.

The legislature have not attempted to alter or repeal the provisions of the charter of the N. M. R. R. Co., in regard to damages for killing stock. The question whether the legislature has the power to change or repeal these provisions of the charter, although discussed in this case, is not presented. The legislature has not attempted to do so, and it would be going outside of the record to consider or decide such question now.

The judgment must be reversed and the cause remanded. The other judges concur, except Judge Vories, who is absent.