THE STATE *ex rel.* WILSON v. GARROUTTE, *Appellant.*

1. **The County Court of Greene County,** without a vote of the people, by order of June 20th, 1870, subscribed $400,000 to the capital stock of Kansas City & Memphis Railroad Company. Order modified October 4th, 1870, so as to make subscription to Hannibal & St. Joseph Railroad Company, to aid in building the K. C. & M. R. R. April, 1871, order made rescinding former orders, and in July, 1871, order rescinding the rescinding order of April, 1871, and bonds issued, payable to H. & St. Jo. R. R. Co., bearer; *Held,* that as there was no acceptance by the latter company of the subscription, there was neither a contract nor a consideration for one, and that it was incompetent for the K. C. & M. R. R. Co. to accept the subscription.

2. **The Amendatory Act** of March 23d, 1861, (Sess. Acts 1860 and '61, p. 60, sec. 2,) prohibited such subscription after its passage, without such vote, to any railroad company, whether it had a pre-existing charter authorizing a subscription by counties or not. *City of St. Louis et al. v. Alexander,* 23 *Mo.* 483, strongly criticised and condemned.—Per SHERWOOD, C. J.

3. **There is no Vested Right** in a railroad company to a subscription until it be actually made, and until that event occurs the Legislature may alter the method whereby such subscription is to be made, without infringing any right.

4. **The Repeal of the Act** of March 23d, 1861, by General Statutes of 1865, (R. C., p. 882,) did not revive the right to receive such subscription, contained in charter of railroad companies, repealed by former act. Neither could such subscription be made without a vote of the people, after passage of General Corporation Acts of 1865, (1 W. S., p. 305,) in accordance with provisions of sec. 17 of that act; and as the attempted subscription in case at bar was made after passage of this act, and without such vote, it was void under sec. 14, art. 11, of constitution of 1865.—Per Sherwood, C. J.

5. **The Consolidation** of the Kansas City & Cameron Railroad Company, formerly Kansas City, Galveston & Lake Superior Railroad Company, under act of March 11th, 1867, "upon such terms as may be deemed just and proper," with H. & St. Jo. R. R. Co. did not operate to transfer to the latter company the franchises and unexecuted rights of former companies, so as to authorize a subscription to be made to H. & St. Jo. R. R. Co. without a vote of the people, and such subscription is void. The effect of consolidation under the act was to work the extinction of the original company in whose favor the subscription was authorized to be made, and the power to subscribe to the original company perished with the company to which it was attached, and in such case there could be no innocent purchasers of the bonds.

6. **Napton and Hough, JJ.,** dissented on the ground that this subscription was declared valid by this court in the case of *The State ex rel. the Attorney-General v. Greene County Court*, (54 Mo. 540;) and the bonds issued in payment of it having obtained currency on the faith of that decision, it thereby became a rule of property, which is binding on the county and its citizens, and should not now be disturbed. *See Clark v. Wolf*, 29 Iowa 197; Freem. on Judgm., sec. 178.

*Appeal from Greene Circuit Court.*—Hon. W. F. Geiger, Judge.

*C. W. Thrasher* and *Henry C. Young* for appellant.

1. Authority given to a county court to subscribe stock to a railroad and issue bonds does not constitute a contract or vested right until the subscription is actually made, 1 Dillon Munic. Corp., § 42; *U. P. R. R. Co. v. Davis Co.*, 6 Kas. 256; *County of Dallas v. MacKenzie*, 94 U. S. 660; *Aspinwall v. County of Daviess*, 22 How. 364; *People v. Coon*, 25 Cal. 635; *State v. Saline Co.*, 45 Mo. 242. A mere right or power granted in the charter of a

corporation, before it has been acted upon, so as to become a vested right, has no greater validity against a subsequent conflicting constitutional provision, than any other law of the State; and it would seem inconsistent to say that the one may not be repealed in the same manner as the other. Certainly the organic law of the State, either by express provision or by implication, is sufficient to repeal both. It cannot be seriously contended that laws enacted for the benefit of corporations are more sacred than those enacted for the protection of individual rights, or that the rules of construction applied to laws governing the individual citizen are not alike applicable to corporation charters.

2. The acts of the General Assembly recited in the pleadings and bonds, if valid, and the proceedings of the county court and railroad companies under the same, as disclosed by the evidence, do not confer authority on the county court to bind the county by a subscription, in the name of the county, to the stock of the Hannibal & St. Joseph Railroad Company, or the Kansas City & Memphis Railroad. See act incorporating Hannibal & St. Joseph Railroad Company, (Laws of 1847, p. 157); act incorporating Kansas City, Galveston & Lake Superior Railroad Company, Laws 1856–57, p. 163; act authorizing the latter company to change name, (Laws 1864, p. 480); act authorizing consolidation of Kansas City & Cameron Railroad Company with any other road, (Laws 1867, p. 143); act authorizing branch railroads, (Laws 1868, p. 90). The Kansas City & Memphis Railroad Company, if it ever had any existence, was created by authority of this latter act and not by the charter of the Kansas City & Cameron Company, and it can have only such powers as were conferred upon it by the act of 1868, and which it might have as a branch of the Kansas City & Cameron road. As such branch, it had no stock, and no authority to receive any subscription to its stock, and, under the act of 1868, it could not receive the subscription of the county without the assent of two-thirds of the voters.

3. The evidence fails to prove any consolidation. It does not appear that there ever was a transfer, or conveyance, or delivery of any property whatever, by the Kansas City & Cameron Railroad Company to the Hannibal & St. Joseph Railroad Company; or that either of said companies had any railroads, or property whatever, to consolidate, or, if they had, that such railroads intersected each other, or were within a hundred miles of each other, or that the new corporation ever exercised any power or authority over, or transacted any business on the line of either of said railroads, (if there were any such railroads,) or ever took possession of, or exercised any control or authority over the same. See resolutions and depositions concerning consolidation in agreed statement of history of case.

4. The evidence does not show that there has ever been any acceptance, by the Hannibal & St. Joseph Railroad Company, of a subscription to its stock by Greene county, so that even if the consolidation of the Kansas City & Cameron Railroad Company and the Hannibal & St. Joseph Railroad Company had authorized such subscription, none such has ever been made. A subscription of stock in a railroad corporation, unless accepted by the corporation, can be of no binding force whatever. Until such acceptance, there is no contract. Parsons on Contracts, (3 Ed.) 399; *Jackson v. Galloway*, 5 Bing. N. C. 75; *Tucker v. Woods*, 12 Johns. 190; *Bruce v. Pearson*, 3 Johns. 534; *Tuttle v. Love*, 7 Johns. 470: *Hunt v. Johnston*, 24 Mo. 509. *Bruner v. Wheaton*, 46 Mo. 363; *Eads v. Carondelet*, 42 Mo. 113; *Eliason v. Henshaw*, 4 Wheat. 225; *Falls v. Gaither*, 9 Porter 605; *Keller v. Ybarru*, 3 Cal. 147; 1 Story on Const. § 378; *Barlow v. Scott*, 24 N. Y. 40; *Honeyman v. Marryatt*, 6 H. L. Cas. 112. The only acceptance claimed in this case, is that of Richardson, as president of the Kansas City & Memphis Railroad. And how could the president of the Kansas City & Memphis Railroad accept a subscription from Greene county to the

capital stock of the Hannibal & St. Joseph Railroad Company? Or by what authority in law did the Kansas City & Memphis Railroad have a president or a board of directors? Certainly not under any charter or law authorizing its creation. If it had any existence as a branch of the Hannibal and St. Joseph Railroad Company, under the law of March 21, 1868, the president and directors of that company were by law the only authorized agents and business managers of said branch. Laws 1868, p. 90. *State v. Greene Co.*, 54 Mo. 540, and dissenting opinion of Mr. Justice Vories, p. 564.

5. The consolidation of two or more railroad companies carries to the new company thus created, only the vested rights of the constituent companies, and not the mere privileges which might have been, but never were, executed or exercised by such constituent company. Hence, all unexecuted powers and privileges belonging to the constituent companies, not vested rights at the time of such consolidation, are not transferred, but extinguished by such consolidation. They do not survive the constituent corporation to which they belonged before consolidation, but perish with it. *Clearwater v. Meredith*, 1 Wall. 25; *Marsh v. Fulton Co.*, 10 Wall. 676; *Harshman v. Bates Co.*, 92 U. S. 569. It is not pretended in this case that the right to receive subscriptions from Greene county to the Kansas City & Cameron Railroad Company, had ever been exercised by that company before the alleged consolidation; or that the subscription was made to the Kansas City & Cameron Railroad Company before consolidation. The right, then, to receive such subscriptions was by the act of consolidation (if there ever was a consolidation) extinguished, and did not pass to the new consolidated corporation or any of its branches.

6. The existence of the Kansas City & Memphis Railroad as an independent corporation, having capital stock, and stock-holders, and liabilities, and assets, and property, separate and distinct from any main road, if au-

thorized at all, is by virtue of the act of March 21, 1868, "to aid the building of branch railroads." Therefore, it cannot, by said act, be endowed with any rights or powers prohibited by the constitution of the State then in force. And the subscription by Greene county to such railroad could only be made with the assent of two-thirds of the legal voters of said county. Const. of 1865, Art. 11, Sec. 14; *State v. Saline Co. Ct.*, 51 Mo. 350; *Carpenter v. Town of Lathrop*, 51 Mo. 483; *State v. Curators, &c.*, 57 Mo. 178.

7. Even if the county court, under the charter of the Kansas City & Cameron Railroad Company, had power to subscribe to the stock of that corporation in the name of said county, and if by consolidation with the Hannibal & St. Joseph Railroad Company the same right was conferred on the new corporation under the name of the Hannibal & St. Joseph Railroad Company, it does not, by any means, follow that such power is, by said charter or consolidation, conferred on the Kansas City & Memphis Railroad, a corporation distinct and separate from either of those before mentioned, and not created by said charter nor said consolidation; but by virtue of the act of March 21, 1868, concerning branch railroads. It can make no difference that the subscription was made to the Hannibal & St. Joseph Railroad Company to aid in building the Kansas City & Memphis Branch. It was, in legal effect, a subscription to the Kansas City and Memphis Railroad as an independent corporation, under the act of 1868.

*J. P. Tracey* for repondent.

SHERWOOD, C. J.—This suit is one of many to recover railroad taxes for the years 1875 and 1876, and directly involves the validity of bonds issued in the name of Greene county to the Hannibal & St. Joseph R. R. Co., to aid in building the Kansas City & Memphis R. R., alleged to be a branch of the former road. To sustain the judgment recovered for the amount of these taxes, reli-

ance is for the most part placed on *State ex rel. v. Greene County Court*, (54 Mo. 540). The case was, however, decided by a divided court, Mr. Justice Vories delivering a very able dissenting opinion; one, the perusal of which will at least give rise to grave doubts as to the correctness of the conclusion reached by the majority of the judges. In addition to that, admissions were made by the demurrer to the answer in that cause, and on which the decision therein was chiefly based, admissions which find no support in the facts developed on the trial of the present cause. The records of the county court of Greene county show that an order was first made June 20th, 1870, subscribing $400,000 to the capital stock of the K. C. & M. R. R. Co., upon certain conditions, among them, that there should be a written acceptance by that company of the subscription. This order was modified October 4th, 1870, so as to make the subscription to the H. & St. Jo. R. R. Co., to aid in building the K. C. & M. R. R., upon similar conditions as before stated. In April, 1871, an order was made rescinding former orders, and the blank bonds were burned. In July, 1871, an order was made rescinding the rescinding order made the previous April, and again rescinding also all that portion of the order of October 4th, 1870, except certain portions not necessary to be mentioned, providing for the issuance of bonds on certain conditions to the H. & St. Jo. R. R. Co. These bonds were in the following form:

UNITED STATES OF AMERICA,

COUNTY OF GREENE, }
State of Missouri. }

No. 136. $1,000.

GREENE COUNTY BOND.

TWENTY YEARS.

Know all men by these presents that the county of Greene acknowledges itself indebted and bound unto the

Hannibal & St. Joseph Railroad Company, or bearer, in the sum of one thousand dollars, which sum the county of Greene hereby promises to pay to said company, or bearer, at the National Park Bank, in the City of New York, twenty years after the date of these presents, together with interest thereon from the date hereof, at the rate of eight per cent. per annum, which interest shall be paid semi-annually, on the presentation and delivery at said bank, of the coupons hereto severally subjoined, until the payment in full of said principal sum.

This bond being issued under and pursuant to an order of the county court of Greene county, State of Missouri, and in accordance with an act of the Legislature of the State of Missouri, entitled "An act to incorporate the Kansas City, Galveston & Lake Superior Railroad Company," approved February 9th, 1857, and an act to amend an act entitled an act to incorporate the Kansas City, Galveston & Lake Superior Railroad Company, approved February 9th, 1857, and for other purposes, approved February 13th, 1864, and also an act entitled "An act to aid in the building of branch railroads in the State of Missouri," approved March 21st, 1868.

In witness whereof the said county court of Greene county have caused these presents to be signed by the justices, and attested by the county clerk, with the seal of said county affixed, and the coupons hereto attached to be signed by the Treasurer of said county.

Done at the city of Springfield this 1st day of August, A. D. 1871.

[SEAL OF COURT.]

(Signed,) R. P. MATHEWS,<br>
(Signed,) RALPH WALKER, } Justices.

Attest: A. DEMUTH, Clerk of County Court.

Also a coupon as follows:

SPRINGFIELD, GREENE COUNTY, MO.,<br>
August 1st, 1871.

The county of Greene, State of Missouri, acknowl-

edges to owe the sum of forty dollars, payable to bearer, on the 1st day of August, 1891, being the interest due on bond No. 136, for 1,000 dollars. This coupon payable at the National Park Bank in the City of New York, State of New York.

(Signed,) JARED E. SMITH,
Treasurer of Greene County.

And were to be delivered from time to time to the Treasurer of the Kansas City & Memphis R. R. Co., and acceptance in writing on the part of *that company* was required and given. Treating these various modifications and rescissions as valid, there was, as shown by the record, no acceptance by the H. & St. Jo. R. R. Co., of this subscription. The first rescinding order shows in unequivocal terms a refusal on the part of that company to accept the subscription, and no subsequent acceptance is shown, nor that such company ever received any of the bonds made payable to its order, nor that such bonds were ever intended to be delivered to that company, nor that such company ever issued any stock to Greene county for the bonds which were issued. Until both a subscription and its acceptance occur, there is no contract. (*Nugent v. The Supervisors*, 19 Wall. 241; *Aspinwall v. Commissioners of County of Daviess*, 22 How. 379.) Under a valid subscription made, the county is entitled as a matter of right to a corresponding amount of stock of the company to whom the subscription is made. Until the occurrence of subscription and its acceptance, as well as a corresponding delivery, or intended delivery of stock, there would exist neither a contract nor a consideration for one. (19 Wall. *supra*.) Nor could that company be compelled by mandamus, as has been suggested, to deliver to Greene county certificates of stock, for the simple reason that no contract so to do has been made. And clearly it was as incompetent for the K. C. & M. R. R. Co. to accept the subscription made to the H. & St. Jo. R. R. Co. as for any other corporation to do so.

I think that it will scarcely meet with doubt or dispute that the evident spirit and purpose of our legislation respecting subscriptions to aid in building railroads, were that such subscriptions should not occur but with the consent of the people of the particular locality. It would indeed be doing violence to the intention of the law-makers to suppose that they designed that such subscriptions should occur, even when made without the formality of a vote, unless the people of the particular locality were favorable to the enterprise. This spirit first found direct and practical expression in the general corporation act, (R. C. 1855, p. 427,) section 30 providing, "That it shall be lawful for the county court of any county to subscribe to the capital stock of any railroad company duly organized under this or any other act, in this State; and the county court * * proposing to subscribe to such capital stock, may for information, cause an election to be held to ascertain the sense of the tax-payers of such county * * * as to such subscription." The word "may" in this section was subsequently held to mean "shall." *L. & D. M. R. R. Co. v. Platte County*, (42 Mo. 171,) Judge Holmes remarking: "It is a power given to public officers, and concerns the public interest and the rights of third persons who have a claim *de jure*, that the power shall be exercised in this manner for the sake of justice and the public good. This construction is confirmed by the act passed at the same session amendatory of this 30th section, and making the act read "shall" instead of "may." * * * It follows that the subscription as made was without authority of law and void. * * *

1. COUNTY SUBSCRIPTIONS TO RAILROADS: the act of March 23rd, 1861.

In the positive requirement that the sense of the taxpayers should be first taken, it is necessarily to be implied that the power was not to be exercised without their consent and authority."

The amendatory act to which Judge Holmes refers was approved January 14th, 1860, (Sess. Acts 1859-60, p.

88,) and goes to show a feeling of growing distrust which the people of this State, even at that early day, felt toward those empowered by law to encumber their property with onerous liabilities, under the plausible disguise of taxation for the public benefit; and that distrust made itself more strikingly manifest in the enactment of a further amendment to section 30, above quoted, providing that subscriptions to the stock of any railroad company should be made if a majority of the voters should so say at an election held for that purpose. Section 2, of the amendatory act, uses this emphatic language: "It shall not be lawful for the county court of any county to subscribe to the capital stock of any railroad company, unless the same has been voted for by a majority of the resident voters who shall vote at such election under the provisions of this act." Sess. Acts 1860-61, p. 60. This section, its merits, its legal efficacy, have never been discussed in this court, although first urged upon its attention in the Macon county case, (41 Mo. 453). It was, however, altogether ignored, receiving no consideration whatever. But section 17 of the general railroad corporation law was examined, (1 W. S. 305,) and held inapplicable, on the grounds, among other, that no negative words were used, showing a conflict with the enabling act; and that, as section 11 was framed after the constitution was adopted, it was designed simply to effectuate the 14th section of the 11th article of that instrument.

In *Smith v. Clark County*, (54 Mo. 58,) it was assumed that in the Macon county case the act of 1861 was discussed, and it was there said that, "though that act was not particularly noticed in the opinion of the court," yet that the act of 1865, which passed before the subscription was made, was fully considered, which act was just as stringent as the act of 1861 so far as the necessity of a vote was concerned. It is obvious that the learned judge who delivered the opinion of the court in that case, failed to note that the act of 1861, unlike that of 1865, contain

words of prohibition, as well as to note that stress is laid on the lack of this feature of the latter act in the Macon county case. Nor in the Clarke county case did the learned judge observe that in the Macon county case the act of 1865 was held inapplicable because passed after the adoption of the constitution of that year, and therefore was presumed as intended to effectuate that instrument, to operate in the future and not the past. Obviously the act of 1861 could only operate on the future—on subscriptions made *after* its passage, and if it could not operate in that way, it was simply a legislative abortion. Our law respecting the construction of statutes requires that they be taken in their "plain or ordinary and usual sense." Applying this rule there is no room left to doubt but that the Legislature intended by the act of 1861 to prohibit, and did prohibit the county court of any county, unless permitted by a vote of the people, to subscribe to the capital stock of "any railroad company," whether it had a pre-existing charter or not. More than that, the act in question makes it a misdemeanor to violate its provisions; for if the judges of a county court should subscribe without complying with the statutory regulation, they would be clearly guilty of official misconduct amounting to a misdemeanor. (1 Russell on Crimes, p. 45, and cases cited; Wag. Stat., pp. 487, 488, sections 17, 21 and 23.) If a misdemeanor, then punishable by indictment. This being the case, it would seem impossible, in the very nature of things, to impute civil validity to an act which at the same time is punishable as a crime—to say, in a word, that the county judges could, without a vote, *lawfully* make a subscription, for making which they could also be *lawfully* punished. Can it be possible that civil ability to perform an act and criminal liability because of its performance can simultaneously attach to one and the *same* act? This question furnishes its own answer. As to the Alexander case, (23 Mo. 483,) approved both in the Macon county case as well as the Clarke county case, I have this to say, that it is far

from being satisfactory, a *per curiam* opinion; and that it would not be easy to find its parallel in judicial annals. In that case the charter of St. Louis of the year 1843 declared that, "the city shall not at any time become a subscriber for any stock in any corporation." By a special act, approved March 1st, 1851, permission was given the city to subscribe to the stock of a certain railroad company. By an act approved March 3rd, 1851, reducing all laws relative to the incorporation of St. Louis, "into one act, and to amend the same," it was declared that, "the city shall not at any time become a subscriber for any stock in any corporation," and that "all acts and parts of acts contrary to and inconsistent with the provisions of this act or within the purview thereof, &c., are hereby repealed." And yet the last named act, with all its sweeping provisions and declarations, did not repeal that of March 1st, 1851. I will take occasion in another place to observe further upon the Alexander case. But even acknowledging that case as authority, it does not, perhaps, conflict with the views here announced, because there no criminal responsibility, as under the act of 1861, attached to making the subscription. Penalty of itself implies prohibition, and this though no prohibitory words are used in the statute. *Bartlett v. Vines*, Skin. 322; S. C. Carthew, 351; *Langston v. Hughes*, 1 M. & W. 596. In *Springfield Bank v. Merrick*, (14 Mass. p. 322,) it is said, "by the statute of 1809, C. 38, it was made unlawful for any bank to loan, negotiate, receive in payment or otherwise deal in the bank bills of other States. * * The note sued on in this action was made and received during the existence of this law and in direct violation of its provisions. Can it then be recovered? If it can, the judiciary power may, to a very great extent, defeat the manifest intent of the Legislature." And this way are all the authorities. (*Williams v. Wall*, 60 Mo. 318; Sedgwick Stat. and Const. Law, 71, and cases cited. *Griffith v. Wells*, 3 Denio 226, and cases cited.)

If it be said that the construction here insisted on, will destroy vested rights under charters, the reply, sustained by authority, is that until a subscription be actually made, there is no vested right, (*St. Jo. & Denver City R. R. Co. v. Buchanan County Court*, 30 Mo. 485). *Aspinwall v. Commissioners of County of Daviess*, (22 How. 364). Conceding, however, that the privilege of having a subscription made without vote is a vested right, even before its exercise by the county court, still the prohibitory law of 1861 does not impinge such right; and for this reason: The right to a subscription is one thing, the right to the method whereby that subscription is made, is another, and totally different thing, since the Legislature may well alter the *method* without infringing the *right*. Thus it has been held that though a statute provided a particular method whereby taxes were to be assessed upon the property of the H. & St. J. R. R. Co., yet that a *general* law, applicable alike to all railroads, accomplished the repeal of the assessment provision of the special law above noted, although no repealing words were used, this court remarking "in the mode pointed out for the assessment and collection of the taxes on defendant's property, there are none of the characteristics of a contract. It is a simple regulation by which the result may be ascertained and arrived at; but there is nothing to inhibit the adoption or substitution of any other, if it should be deemed advisable or advantageous. The rights of the company are in no wise interfered with. The actual valuation of the property is the primary object sought to be attained, and the only question is, how that shall be most surely accomplished. * * The State having adopted in part a different method from that contained in the act of 1852, and this being in some respects wholly inconsistent with that act, the latter mode, so far as the inconsistency goes, must prevail. (*State v. H. & St. J. R. R. Co.*, 60 Mo. 143.) It is specially noteworthy in that case that the principle asserted in the Alexander case

2. CHARTER POWER TO RECEIVE MUNICIPAL SUBSCRIPTIONS, NOT A VESTED RIGHT.

was urged upon the attention of this court, but that it was passed in silence. Now, unless it can be shown that a general mode of assessment is more inconsistent with a special mode of assessment than a general prohibition is inconsistent with a special permission, then the Alexander case must be held as overruled, at least in principle, and substantially repudiated by the H. & St. J. R. R. Co. case. But if we take it that the mere method of subscription is a vested right, or that the act of 1861 does not accomplish what we have asserted; does not repeal inconsistent, special provisions in charters; does not invalidate and render void acts violative of its provisions, then this is the result: that the Legislature, by the act of Feb. 16th, 1872, (Sess. Acts 1872, p. 19,) whereby they made it a felony for the judges of a county court to subscribe to the stock of any railroad company unless authorized so to do by a vote of two-thirds of the qualified voters, amounts to nothing, because, forsooth, under the ruling in the Alexander case, a general prohibition against subscriptions, may well comport with a special permission to subscribe! Nay, more, if the mere method of subscriptions is a vested right, and as vested rights cannot be interfered with any more by constitutions than by Legislatures, (*Dodge v. Woolsey*, 18 How. p. 331,) and if the rule announced in the Alexander case is to continue to prevail, it of necessity follows that even the framers of the present constitution, when fondly imagining that they, by Sec. 6, of Art. 9, (p. 27,) had put an absolute interdict upon future railroad subscriptions, sadly missed their mark and fell far short of their design. Because: first, vested rights are sacred. Because: second, the same canons of construction apply equally to constitutions and statutes, (41 Mo. *supra*,) and "there is nothing irreconcilable between a general prohibition (even in a constitution) to subscribe for stock in a corporation and a permission (in a charter) to subscribe for stock in a particular corporation." It would seem that a court might well hesitate before following the Alexander case to the above, its only logical sequence, thus

hoisting anew the flood-gates of that series of frauds and felonies (for such has largely been the history of railroad subscriptions in this State) which has saddled whole communities with burdens too grievous to be borne, and encumbered, with an ever increasing debt, every acre in the fairest portion of this great commonwealth.

If it be said that the act of 1861 was repealed by virtue of the provisions of the general statutes of 1865, (Gen. St. p. 882) then, while doubting that this has occurred, I reply, if such repeal did occur, if I am right as to the effect of the act of 1861 upon all railroad charters in respect to the method of subscription, then the provisions of that act abrogated all conflicting provisions in such charters, and when the general statutes went into effect, they, according to their terms, repealed all laws re-enacted in whole or in part in the general statutes; but such repeal did not revive any law theretofore repealed or superseded; consequently, if the law of 1861 was repealed or superseded by the 17th section of the general corporation act, (1 W. S. p. 305,) which was passed after the constitution of that year, and was designed, as has been expressly decided, to effectuate the 14th section of the 11th article of that instrument, (41 Mo. *supra*,) then as no vote was taken in accordance with the provisions of the 17th section aforesaid, the attempted subscription in the case at bar was, both according to the constitution of 1865 and the law passed pursuant to its requirements, void on that ground alone, regardless of other considerations hereinafter set forth. So that it matters little whether the act of 1861 was repealed by the general statutes of 1865, or not; in either event a vote first taken was an indispensable prerequisite to a valid subscription.

We are thus brought to consider the effect of the act of March 11th, 1867, as well as that of March 21st, 1868.*

*An act to amend an act entitled "an act to incorporate the Kansas City, Galveston & Lake Superior Railroad Company," approved March 11th, 1867. (Laws 1867, p. 143.)

An act to aid the building of branch railroads in the State of Missouri, approved March 21st, 1868. (Laws 1868, p. 90.)

3. CONSOLIDATION OF RAILROADS: municipal subscriptions.

In the Greene county case (*supra*) it is to be observed that the demurrer to the answer admitted that the Kansas City, Galveston & Lake Superior Railroad Company had under the act of 1864 changed its name to that of the Kansas City & Cameron Railroad Company, that under the act of 1867 that company had consolidated with the Hannibal & St. Joseph Railroad Company, by virtue of which consolidation the latter company became the owner and possessed of all the rights, property, privileges, immunities and franchises, which the said K. C. G. & L. S. R. R. Co. had and possessed by virtue of its charter and of acts amendatory thereto, or which the K. C. & C. R. R. Co. had by virtue of the charter of the K. C. G. & L. S. R. R. Co., &c., &c. There were no such admissions made in the present instance. Nor did the evidence show any such consolidation. Mere resolutions to consolidate and mere statements in such resolutions to that effect, are but statements of legal conclusions. Facts should have been shown in order that the court could have determined whether in truth such consolidation had occurred, and whether a transfer of the property of the K. C. & C. R. R. Co. to the H. & St. J. R. R. Co. had in reality taken place. But granting that a consolidation between the two companies did occur in accordance with the act of 1867, what was the effect of such consolidation? The language of the act is "to consolidate it (the company) with any other company, on such terms as may be deemed just and proper." The original charter of the K. C. G. & L. S. R. R. Co., contained no provision looking to consolidation. Now, what was the effect of the act of 1867, and of the alleged consolidation in conformity thereto? Did it transfer to and vest in the H. & St. J. R. R. Co. the franchises, the corporate and unexecuted rights of the K. C. & C. R. R. Co.?

It is well settled law that the privilege a railroad company may have of reciving a subscription to its stock is not a vested right, and does not become so until subscrip-

tion is actually made, and may be repealed at any time before that event occurs. (1 Dillon Munic. Corp., § 42; 22 How., *supra*; *County of Dallas v. MacKenzie*, 94 U. S. p. 660; *U. P. R. R. Co. v. Daviess County*, 6 Kas. 256.) The act in question does not even impliedly give authority to the K. C. & C. R. R. Co. to transfer its franchises and unexecuted powers to the company with which it might in the future consolidate, nor does it provide upon what specific terms the consolidation shall occur, nor what shall pass or be transferred thereby. Without legislative authority one company could not consolidate with another, and as legislative sanction must be given to a consolidation, (*Clearwater v. Meredith*, 1 Wall. 25,) so, also, must it prescribe the terms under which and through which such union must occur; and nothing passes from one company to another by the action of the Legislature, but what is expressly permitted or authorized thus to pass. (*P. & W. R. R. Co. v. Maryland*, 10 How. 376.) Upon the occurrence of consolidation by reason of legislative permission, the two companies become united and form an entirely new and distinct company. (*McMahan v. Morrison*, 16 Ind. 172.) In *Harshman v. Bates Co.*, (92 U. S. 569,) where the law of this State authorizing consolidation, declared, in express terms, that the new company should be entitled "to all the powers, rights, privileges and immunities which belong to either," and it was contended that this statutory provision justified the county court in making the subscription to the new company, without further authority from the people, this assumption was not countenanced, the court saying, "But did not the authority cease by the extinction of the company voted for?   *   *   But so long as the authority remains unexecuted the occurrence of any event which creates a revocation in law will extinguish the power. The extinction of the company in whose favor the subscription was authorized worked such a revocation. The law authorizing the consolidation of railroad companies, does not change the law of attorney

and constituent. It may transfer the vested rights of one railroad company to another upon a consolidation being effected, but it does not continue in existence powers to subscribe for stock given by one company to another, which, by the general laws, are extinguished by such change."

If, as held by the above quoted authorities, the power to have a subscription made without a vote to that effect first taken, was never executed, by subscription actually made, but remained an unexecuted power, and did not pass to the H. & St. Jo. R. R. Co. by reason of the alleged consolidation, then it conclusively follows that the subscription was wholly without authority of law, and therefore void. The Greene county case differs from this in the very essential particular that the demurrer to the answer, as above seen, confessed that a consolidation had occurred and that by reason thereof, all the rights, property, privileges, immunities and franchises, formerly possessed by the K. C., G. & L. S. R. R. Co. had passed to and become vested in the H. & St. J. R. R. Co., and the remarks of the court were based upon that theory, and are therefore inapplicable here, where no such admissions are made, and the authorities cited in that case clearly show such inapplicability. The case of *P. & W. R. R. Co. v. Maryland*, (10 How. 376,) was one respecting exemption from taxation, where, in consequence of legislative action, the company in which the other company was merged became possessed of the powers, rights and privileges the several companies had, prior to consolidation, been possessed of. So, also, the case of *Tomlinson v. Branch*, (15 Wall. p. 460,) was one merely respecting exemption from taxation, where, by the very terms of the legislative permission, one company became merged in the surviving company, which became invested with all the rights, privileges and property of or belonging to the company whose identity was lost because of the consolidation. And the court there were of the unanimous opinion, and speaking through Mr. Justice

Bradley, who afterwards delivered the opinion in the Bates county case, (*supra,*) said: "The keeping alive of the rights and privileges of the old company, and transferring them to the new company, in connection with the property, indicates the legislative intent that such property was to be holden in the same manner and subject to the same rights as before. The owners of the property were to lose no rights by the transfer, nor was the public to lose any rights thereby." But Mr. Justice Bradley was also careful to say: "Of course these remarks do not apply to those corporate rights and franchises of the old company which appertain to its existence and functions as a corporation. These become merged and extinct." These remarks seem to have escaped the attention of the judge who delivered the majority opinion in the Greene county case, or else were deemed of no importance in consequence of the admitted allegations of the answer. Chartered exemption from taxation has always been deemed a vested right, incapable of revocation or abrogation by the Legislature, or by consolidation in consequence of legislative action or authorization. Not so, however, as above seen, in respect to those rights and powers, which are not vested, and do not become so, in consequence of remaining unexecuted. In the Clarke county case, (54 Mo. 58,) and the Sullivan county case (51 Mo.) no question of consolidation arose, and consequently they cannot be urged in support of the Greene county case, even should it be thought to antagonize this one on the point of consolidation.

4. BRANCH RAILROADS: municipal subscriptions.

Again, a branch road necessarily presupposes a main trunk line. It is a simple solecism to make any other supposition. It would be just as reasonable to suppose a branch without a tree, an agent without a principal, or a child without a sire. No pretense is made that the main line has ever been built. The Kansas City & Memphis Railroad Company either had its origin in the act of 1868 or it had not. If not, then what color of validity can corporate acts have which rest upon

no legislative authority? If, on the contrary, that organization is based upon that act, then no refuge is left from the inevitable result that the inhibition of the constitution of 1865, requiring a vote to be taken before subscription, applies. The majority opinion in the Greene county case admits that the Kansas City & Memphis Railroad Company, "for all practical purposes is really a distinct and independent branch. The union exists simply in name, but not in substance." This statement is fully borne out by the record here. What is called a branch road is, under the very terms of the act of 1868, totally distinct from the H. & St. Jo. R. R. Co.—with separate stock and stockholders, president, directors and liabilities. This being so, this question at once seeks an answer: Can the mandates of the constitution of 1865 be thus flimsily evaded by merely calling what is in evident truth and fact an independent road, a branch? If so, then, in the expressive language of Mr. Justice Norton in the Lafayette county case, "constitutional provisions accomplish nothing, and organic laws may be set at naught by the merest evasion." If, then, the K. C. & M. R. R. Co. is to be regarded as an independent organization, as having its origin in the act of 1868, and of this a perusal of that act and of the facts disclosed by this record will convince any one; then, under the authority of the Saline county case (51 Mo. 351) and of the Callaway county case (Id. 395) a vote, as required by the constitution, was an indispensable prerequisite to a valid subscription.

In *Nugent v. The Supervisors*, (19 Wall. 241,) the subscription had been made and accepted by the company anterior to the occurrence of consolidation of that company with another; and that case is distinguished on that express ground from that of *Marsh v. Fulton Co.*, (10 Wall. 676,) where in 1853 the Mississippi R. R. Co. was incorporated by the Legislature of Illinois, and authorized to construct a railroad from Warsaw, on the Mississippi river, to the east line of the State. A vote of the people

of Fulton county was then taken authorizing a subscription to the stock of that company. After vote taken, but before subscription made, the Legislature in February, 1857, amended the charter of the company, divided the road into three divisions, designated as the Western, the Central and the Eastern, and each division was authorized to elect a separate board of directors for the management of their own division. Conformably to this action of the Legislature a subscription was then made to the Central division; but it was held by the Supreme Court of the United States that this was a totally different enterprise from the one authorized by the vote had, and that the bonds were void and valueless, into whosesoever hands they came. That case, which has twice been cordially endorsed by this court in *State v. Saline Co. Court*, ( 48 Mo. 390,) and *Ranney v. Baeder*, (50 Mo. 600,) confessedly bears a striking resemblance to the present one. Here a subscription was authorized to the K. C. G. & L. S. R. R. Co.; that company afterwards by legislative authority changed its name to that of the K. C. & C. R. R. Co.; after that an alleged consolidation occurred between the latter company and the H. & St. J. R. R. Co.; after that the subscription was made to the last named company for the use of the K. C. & M. R. R. Co., the mere creature of the act of 1868. A more conspicuous parallelism could not well exist between two cases, because there can be no difference, in point of principle, between an authority to subscribe to a particular company, conferred under legislative sanction by a vote of the people, and a like authority directly conferred by statutory enactment, as in either instance the effect and consequences attending a subsequent consolidation cannot fail to be the same. We hold, therefore, that the rule of law which dominates the Fulton county case must also dominate this one and be conclusive against a recovery by the tax collector.

It is claimed, however, that a large number of the bonds issued have been transferred to "innocent purchasers," and therefore the bond should be paid, even unto the

uttermost farthing, regardless of whatsoever means, measures and motives may have caused the market to be flooded with the unwarranted issue. But where there is a total lack of power to make the subscription, there cannot be such a thing as an innocent purchaser. (*County of Dallas v. MacKenzie*, 94 U. S. 660; *McClure v. Township of Oxford*, Id. 429; *Marsh v. Fulton County*, 10 Wall. 676; *Aspinwall v. Commissioner of County of Daviess*, 22 How. 364.) But granting that there may be, is it not barely possible that the tax-payer who is called on to pay these unauthorized bonds has some rights which the courts should feel bound to respect? Is the judicial eye to bestow no glance in the direction of the defendant to the action? His property, at least, has been acquired in no questionable manner, and certainly his equities to have that property protected against unlawful assessments and seizures are evidently equal to the equities of him who has bought these bonds with the law and constitution staring him in the face, who, reaching out with insatiate arms to grasp in all the shore, has "taken the chances," and, taking them, has made speculations without profit and ventures without gain.

The judgment is reversed. Judges HENRY and NORTON concur in a separate opinion. Judges NAPTON and HOUGH dissent, the former filing a dissenting opinion.

REVERSED.

HENRY AND NORTON, JJ., CONCURRING.—We concur, but express no opinion as to the effect of the act of 1861 on the question involved. We are fully satisfied by the other reasons given in the foregoing opinion that the county court of Greene county was not authorized to subscribe for the stock in question, and that the bonds issued in payment therefor are not binding on the county.

It is not the case of an irregular exercise of authority, but of an assumption of authority where none existed,

and we think that the bonds are therefore utterly void, no matter in whose hands found.

HOUGH, J., DISSENTING.—On the 29th of March, 1878, the plaintiff instituted suit in the Greene circuit court to recover back taxes designated on the Back Tax Book as "Railway taxes for the years 1875 and 1876," on land in Greene county, in the State of Missouri, to pay interest on certain bonds theretofore issued in the name of said Greene county to the Hannibal & St. Joseph Railroad Company to aid in building the Kansas City & Memphis Railroad as a branch of said Hannibal & St. Joseph Railroad.

5. THE SUBSCRIPTION OF $140 000.

On the 20th of May, 1878, final judgment was rendered in favor of the plaintiff, from which judgment the defendant has appealed to this court. It is agreed between the parties to this suit "that the only question at issue, or sought to be raised, in this case, or submitted to the court for adjudication, is the validity of the bonds issued by and in the name of Greene county to pay a subscription of stock in the Hannibal & St. Joseph Railroad Company, to aid the building of the Kansas City & Memphis Railroad, which bonds were issued and sold and the proceeds expended in the work of grading and masonry on said road."

This identical question was considered and decided in the case of the *State at the relation of the Attorney-General v. Greene County and Greene County Court et al.*, 54 Mo. 540, which was a proceeding to restrain by injunction the collection of a tax levied, and the further levy of any tax in Greene county, for the purpose of paying either principal or interest on the bonds aforesaid, and said bonds were in said suit declared by this court to be valid, on facts stated in an answer filed by Greene county. The object of the present appeal is to review that decision. That decision furnished a rule of property, as to these bonds, which is binding upon Greene county and its citizens. Moreover, that decision was rendered at the January term, 1874, of

this court, and the ruling there made as to the effect of the consolidation of the K. C. & C. R. R. Co. and the Hannibal & St. Joseph R. R. Co., was, two years afterwards, cited with approval in the case of *Daniels v. the St. Louis, Kansas City & Northern Railway Company*, 62 Mo. 43, the opinion in which latter case was concurred in by all the members of this court, except Judge Vories, who was absent. Credit and currency having been thus given, by this court nearly five years ago, to these bonds, whatever might be my opinion, if the question were an original one, I cannot now join in declaring these bonds invalid, especially in a case to which the holders of the bonds are not parties—*State ex rel. v. Sanderson, Collector*, 54 Mo. 203. If any persons have purchased these bonds on the faith of the decisions of this court declaring them to be valid, they are as much entitled to protection as they would be if the right of the county court to issue the bonds had been affirmed by this court before the bonds were issued. *Smith et al. v. County of Clark*, 54 Mo. 75; *Gelpcke v. City of Dubuque*, 1 Wall. 175; *Thomson v. Lee County*, 3 Wall. 327; *Havermeyer v. Iowa County*, Ib. 294; *State of Missouri v. Miller*, 50 Mo. 133. For these reasons I am in favor of affirming the judgment of the circuit court.

NAPTON, J., DISSENTING.—I dissent from the above opinion. I adhere to the decision of this court pronounced by Judge Wagner in 1874, (54 Mo. 540; and subsequently, in 1876, reiterated in *Daniels v. St. Louis, Kansas City & Northern Railway Company*, 62 Mo. 43,) which had the concurrence of all the Judges, except Judge Vories, who dissented from the original opinion. But whether the original opinion in this case was right or wrong, since, on the faith of it, money was invested, I am opposed to disturbing it. I, therefore, dissent, *in toto*, from the opinion of the majority of the court.