| 72 | 329 |
| 112 | 135 |
| 72 | 329 |
| 78a | 409 |

THE STATE *ex rel.* BARLOW, *Plaintiff in Error*, v. THE DALLAS COUNTY COURT.

1. **Railroads:** POWER OF COUNTY COURTS TO SUBSCRIBE STOCK. The act of March 23rd, 1861, (Sess. Acts, p. 60,) withdrew the power conferred on the county courts by the charter of the Laclede & Fort Scott Railroad Company, (Sess. Acts 1859-60. p. 434,) to subscribe to the stock of that company without first submitting the question to a vote of the people.

NAPTON AND HOUGH, JJ., dissented, holding that both upon a true construction of the statutes in question, and upon the principle *stare decisis*, the decision should have been otherwise. A similar point was otherwise decided in *Smith v. Clark Co.*, 54 Mo. 58.

*Error to Dallas Circuit Court.*—Hon. R. W. Fyann, Judge.

Affirmed.

This was a proceeding by mandamus to compel the county court of Dallas county to provide and set apart funds to pay certain coupons held by the relator. The coupons were for interest on bonds issued in payment of a subscription which had previously been made by the county court, on behalf of the county, to the capital stock of the Laclede & Fort Scott Railroad Company, without first submitting the question to the qualified voters of said county. The circuit court refused the mandamus, and the relator sued out a writ of error.

*Thos. C. Fletcher* for plaintiff in error.

*John P. Ellis* for defendant in error.

Sherwood, C. J.—The act of March 23rd, 1861, (Sess. 1860-61, p. 60,) we regard as decisive of this case, so that it is unnecessary to pass upon any other point which has been discussed. Section 2 of that act provides: "It shall not be lawful for the county court of any county to subscribe to the capital stock of any railroad company, unless the same has been voted for by a majority of the resident voters who shall vote at such election under the provisions of this act."

Strange as it may appear, that act, though cited by counsel, was never discussed until the year 1878, when I undertook to discuss the force and effect of its prohibitory provisions in *State ex rel. Wilson v. Garroutte*, 67 Mo. 445. In that case I endeavored to show that that act, by the very force of its terms, was applicable to existing charters, as well as to those which might subsequently be created; that in short, it applied to "any railroad company," and that by that act it was made a misdemeanor, a penal offense, for the "county court of any county" to subscribe, etc., unless

a vote had been first taken, as in that section prescribed. I endeavored also to show that even though no prohibitory words had. been employed in the act, yet the fact that a penalty having been provided thereby, (1 Russ. on Crimes, p. 45 ; 1 Wag. Stat., pp. 487, 488, §§ 17, 21, 23,) that this of itself implied prohibition, and I cited a number of authorities supporting that view. Since then, my attention has been called to an opinion of this court delivered by Mr. Justice Napton, in *Downing v. Ringer*, 7 Mo. 585, where a promissory note given for a town lot before the plat of the town was acknowledged, filed, etc., as required by statute, was held " *absolutely void*," both at law and in equity, even in the hands of a transferee; and the language of Lord Holt was in that case, quoted with approval, where he says : " Every contract made for or about any matter or thing which is prohibited, and made unlawful by any statute, is a void contract, though the statute itself doth not mention that it shall be so, but only inflict a penalty on the defaulter; because a penalty implies a prohibition, though there are no prohibiting words in the statute." It would appear not unreasonable that the same legal principles should govern where a *railroad bond* was issued contrary to law, as well as where a *promissory note* is executed in like disregard of the legislative will.

It is unnecessary to pursue this subject further. I refer for a more extended discussion of it to my opinion in the former case, *State ex rel. Wilson v. Garroutte, supra.* HENRY and NORTON, JJ., while concurring in the majority opinion in that case, gave no expression of their views as to the force and effect of the act of 1861. Since then they have concurred in the views which I heretofore had expressed in relation to that act. As the alleged subscription to the capital stock of the Laclede & Fort Scott Railroad Company was made without first submitting the matter to a vote of the people, we must approve the action of the circuit court in its denial of a peremptory, and its dismissal of the alternative writ, and affirm the judgment. HENRY

and NORTON, JJ., concur. NAPTON and HOUGH, JJ., dissent.

HOUGH, J., DISSENTING.—The charter of the Laclede & Fort Scott Railroad Company, granted by act of the legislature on January 11th, 1860, (Acts 1859–60, p. 434,) authorized any county to subscribe to its stock and to issue bonds in payment thereof, without submitting the question to a vote of the people. The general law concerning railroad corporations, in force at that time, was as follows : " It shall be lawful for the county court of any county, and. the city council of any city, to subscribe to the capital stock of any railroad company duly organized under this or any other act in this State; and the county court or city council subscribing, or proposing to subscribe, to such capital stock, may for information, cause an election to be held to ascertain the sense of the taxpayers of such county, or such city, as to such subscription, and as to whether the same shall be paid by issues of county or city bonds, as the case may be, or by taxation." R. S. 1855, p. 427, § 30. On the 14th day of January, 1860, three days after the charter was granted to the Laclede & Fort Scott Railroad Company, an act was passed amending the foregoing section of the general law, by substituting for the words "may for information," the words " shall for information " No one has ever pretended that this act in any way affected the charter of the Laclede & Fort Scott Railroad Company. The two acts, the charter and the amendment of the general law, were passed at the same session, and could well stand together. The amendment to the general law furnished the general rule, and the charter of the Laclede & Fort Scott Railroad furnished a special rule or an exception. *Alexander v. The City of St. Louis,* 23 Mo. 483; Dwarris on Statutes, 533. The power to subscribe contained in the charter, was not made subject to the provisions of the general railroad law, as was the case in *Leavenworth*

*& Des Moines R. R. Co. v. County Court of Platte Co.*, 42 Mo. 171.

The act of 1861, which, it is claimed, repealed the provision in the railroad charter authorizing counties to subscribe without a vote of the people, is as follows:

"An act supplemental to an act entitled 'an act to authorize the formation of railroad associations and to regulate the same,'" approved December 13th, 1855.

Be it enacted by the general assembly of the State of Missouri, as follows:

Section 1. That whenever the county court of any county in this State, or the city council of any city, shall be satisfied that the citizens of said county or city desire to subscribe to the capital stock of any railroad company, it shall be the duty of such county court, or city council, to order an election to be held in the said county or city in accordance with the provisions of the 30th section of the above recited act, giving at least thirty days notice of the time and place of holding such election, by written or printed handbills, posted up in such election precinct, in such county or city, by the sheriff or marshal thereof, and if a majority of all the resident voters of said county or city, who are qualified to vote for county and State officers, and who shall vote at such election, shall cast their votes for subscribing said stock, then the county court or city council shall subscribe such stock to said road.

Section 2. It shall not be lawful for the county court of any county to subscribe to the capital stock of any railroad company, unless the same has been voted for by a majority of the resident voters, who shall vote at such election under the provisions of this act.

Section 3. No person shall be exempt from the payment of his *pro rata* share of any tax levied by the county court or city council, because such person shall hold stock in such company. This act shall take effect and be in force from and after its passage. Approved March 23rd, 1861."

This is the entire act. It is assumed in the *State ex rel. Wilson v. Garroutte*, 67 Mo. 445, that because this act contains prohibitory words, it repealed the special provisions of the charter of the Laclede & Fort Scott Railroad Company. I am unable to see any ground for this assumption. The act, it will be observed, has no repealing clause, and does not profess to repeal any special law theretofore passed on that subject. It was merely an amendment of the general law, and the prohibition contained in the second section related only to subscriptions provided for by the 30th section of the general law as amended by the 1st section, and not to subscriptions made under special charter provisions. This is obviously the proper and natural construction of this act; and the very language of the act itself supports this construction. The 1st section is but an amplification of the act of January 14th, 1860, and authorized subscriptions in all cases, and to any road, whenever a majority of the resident voters of the county voted therefor. This section does not forbid particular railroad companies, thereto duly authorized by act of the legislature, from receiving subscriptions without such vote ; and it is certainly unnecessary to cite authorities to show that a general affirmative authority to any county to subscribe for the stock of any railroad company, on certain conditions, is not inconsistent with, or repugnant to, a special authority to subscribe to a particular road without conditions. Section 1, therefore, must be held to apply only to railroad subscriptions for which no special provision had been made in the charters of railroad companies. Now, the prohibition contained in the 2nd section is not directed against subscriptions authorized by special charters, but forbids any subscription from being made under the 1st section, " unless," in the language of the statute, " the same has been voted for by a majority of resident voters, who shall vote at *such election* under *the provisions of this act.*" The words I have italicized plainly point to the subscriptions authorized by the 1st section, as those

which come under the prohibition contained in the 2nd section. These views are, I think, conclusive of the subject.

But apart from this, every consideration which, in my judgment, can induce a court to invoke the doctrine of *stare decisis*, demands that we should adhere to the decision of this court in the case of *Smith v. Clark County*, 54 Mo. 58. In that case the act of 1861 was relied upon, was examined by this court, and was, doubtless, carefully considered, and the court decided that it did not effect the repeal of the privilege of subscription without a vote of the people contained in special charters. In the same case, the same question was again considered, on a motion for rehearing, and the same conclusion was again reached and was distinctly restated in the opinion on the motion. In the opinion first delivered, the court, after referring to the several acts above cited and the decisions applicable thereto, said: "So that the provisions of the revised code of 1855, and the amendatory acts of 1860 and 1861, and the constitutional prohibition, and the legislative adoption of that prohibition immediately after its passage, have been held by repeated adjudications, and without any conflicting opinions of the court, or any individual judge thereof, so far as the reports show, not to effect the repeal of the privilege contained in special charters. That this was understood to be the law of this State appears also to have been recognized by the legislative department of the government, for in 1872 the legislature passed an act entitled "An act to repeal certain sections of law granting to the county courts and other corporate bodies the power to subscribe stock to railroad companies." This act was approved January 30th, 1872, and specifically repeals certain designated sections in certain acts particularly specified, and including among the twenty or thirty charters enumerated, the charter of the Alexander & Bloomfield Company. This was, or would have been, a mere act of supererogation, if it had been understood or supposed that previous legislation on

·the subject had already effected this object. Thus it will be seen that, up to January, 1872, the decisions of the Supreme Court had been acquiesced in, and no doubt acted on, by the railroad corporations and the municipal authorities of various counties, cities and towns, by virtue of the provisions in the charters of railroad companies. After the acts of 1855, 1860, 1861, 1865, the subject was regarded as *res adjudicata*, and upon this view millions of dollars have been invested. Whatever, therefore, might be the opinion of this court, or of any individual judge, had the question come up for examination as an open one, we are all of the opinion that it is now too late to disturb the received construction."

In the opinion on the motion for rehearing, after stating that the charter of the company authorized subscriptions to be made without a vote of the people, the court said: " The next point was, whether this provision of the charter had been repealed by any subsequent legislation, or by the new constitution of 1865. This point we considered settled by repeated decisions of this court, to the effect that no subsequent act of the legislature or the constitution had repealed that provision in the charter. On the faith of these decisions large amounts had been invested, and we considered that question had been put at rest, and had become a rule of property which we had no right to disturb."

The effect of the act of 1861, upon special charters previously granted, cannot, therefore, be regarded as a new question in this court.

The opinion of Judge Napton in *Downing v. Ringer*, 7 Mo. 585, cited in the opinion of the court in this case, has no possible relevancy to the point under discussion. The question before us now, is not as to the effect of a prohibition, but whether there has been any prohibition as to the subscription in controversy. I am of opinion that the act of 1861 does not repeal the privilege contained in

the charter of the Laclede & Fort Scott Railroad Company, and in this opinion Judge NAPTON concurs.